# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LESLEY A. H.,[1]                                    )
                                                    )
          Plaintiff,                      )
                                                    )        **CIVIL ACTION**
v.                                                  )
                                                    )        **No. 19-2509-JWL**
ANDREW M. SAUL,                                     )
Commissioner of Social Security,                    )
                                                    )
          Defendant.                      )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed an application for DIB and SSI on September 22, 2016.  (R. 15, 201-13).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims substantial evidence does not support the ALJ's finding Plaintiff does not meet or equal the criteria of Listing 11.09 for Multiple Sclerosis (hereinafter MS), the ALJ erred in evaluating the treating source opinion of Dr. Lynch, erred in assessing residual functional capacity (RFC), and erred in evaluating conflicts between the Dictionary of Occupational Titles (DOT) and the testimony of the vocational expert (VE).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.  Listing 11.09, Multiple Sclerosis

Plaintiff claims the ALJ erroneously determined "that there was 'no abnormal findings' in Plaintiff's medical records, and that the record 'fail[ed] to document the presence of objectively discernable medical signs' that Plaintiff satisfied the Listing at 11.09 for Multiple Sclerosis."  (Pl. Br. 15) (quoting R. 21).  She argues, "In making this finding [the] ALJ makes the unsupported and unreasonable finding that Plaintiff can engage in significant gainful activity (SGA)."  Id. at 15-16.  She continues,

> While the claimant bears the burden at each step of the sequential
> evaluation to demonstrate that their impairments meet a listing, the onus is
> on the ALJ to articulate that medical evidence and impairments of a level of
> severity presented by the claimant do not reach the high level of severity set
> by the Commissioner.
>
> ***
>
> The ALJ's selective use of vague references in the record, inappropriate
> medical judgment, minimization of Plaintiff's subjective reports of pain and
> impairment, and disregard of medical evidence constitute reversible err[or]
> sufficient for either remand of the case or direct award of benefits to
> Plaintiff.

(Pl. Br. 16) (citing 20 C.F.R. § 404.1525).

Plaintiff argues her condition meets the criteria of both paragraph A and paragraph

B of Listing 11.09. Id.

The Commissioner recognizes that Listing 11.09 may be met in one of two ways,

either "disorganization of motor function in two extremities per § 11.00(D)(1), resulting

in an extreme limitation per § 11.00(D)(2) in the ability to stand up from a seated

position, balance while standing or walking, or use the upper extremities;" 20 C.F.R., Pt.

404, Subpt. P, App. 1, § ll.09A; or "Marked limitation per § 11.00(G)(2) in physical

functioning per § 11.00(G)(3)(a) and in one of the following: 1. Understanding,

remembering, or applying information per § 11.00(G)(3)(b)(i); 2. Interacting with others

per § 11.00(G)(3)(b)(ii); 3. Concentrating, persisting, or maintaining pace per

§ 11.00(G)(3)(b)(iii); or 4. Adapting or managing oneself per § 11.00(G)(3)(b)(iv)." Id.

§ 11.09B.  (Comm'r Br. 5-6) (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.09).  He

argues the state agency physician, Dr. Marty, opined Plaintiff does not meet an MS

Listing and Dr. Lynch, Plaintiff's treating physician, concluded Plaintiff "did not have

significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station," precluding a finding that Listing 11.09A was met.  (Comm'r Br. 6-7) (citing R. 566).  He notes Plaintiff cites record evidence of moderate limitations in the broad areas of mental functioning considered at steps two and three of the evaluation process but argues that she does not explain how the ALJ's finding of moderate limitations established the marked mental or physical limitation required by Listing 11.09B.  Id. at 7.  He argues that Plaintiff did not meet her burden to show she met the Listing.  Id. at 8.

In her Reply Brief, "Plaintiff contends that the evidence of the record outweighs the evidence purported by the ALJ, and that no reasonable factfinder, reviewing the evidence as a whole, would come to the same conclusion" as the ALJ.  (Reply 3).  Plaintiff points out that a claimant need only show that she meets the criteria of Listing 11.09A or Listing 11.09B, not both.  Id. at 4.  Plaintiff argues that while "[t]he Commissioner largely repeats the limited findings pointed to by the ALJ to support [the decision, he] fails to see the forest for the trees."  Id.

A.      The ALJ's Findings Relating to Listings 11.09A and 11.09B

The ALJ found Plaintiff has severe impairments of relapsing and remitting MS and depression.  (R. 18, finding no. 4).  He found Plaintiff's impairments do not meet or medically equal the severity of a listed impairment, id. at 19 (finding no. 5), and explained why her impairments do not meet the criteria of Listings 11.09 or 12.04:

> Specifically, the criteria of Listing 11.09 for Multiple Sclerosis is [sic] not
> satisfied because, as is detailed herein, the record does not document either
> (A) a disorganization of motor function in two extremities resulting in an

6

extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, or (B) a marked limitation in the ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself.

The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04.  In making this finding, I have considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

(R. 20).  He found the medical evidence "fails to document the presence of objectively discernible medical signs reasonably consistent with a finding that the claimant has a marked or extreme limitation in any of the functional areas that the [sic] comprise the 'paragraph B' criteria".  Id. at 21.  He continued,

Additionally, the claimant's medical records indicate generally no abnormal findings.  During a consultative examination she exhibited adequate hygiene and grooming, no acute physical distress, no signs of impulsivity, endangering attitudes, or uncontrolled behaviors.  (Ex. 7F /2).  Her speech was goal directed and she had normal eye contact.  (Ex. 7F/3).  The claimant did exhibit some annoyance with the examiner, and was minimally friendly, and did reflect hopelessness in her responses.  (Ex. 7F/3).  However, the claimant's thought processes were clear, coherent, organized, logical, and free of delusions and obsessions.  (Ex. 7F/3).  Moreover, the claimant was alert, oriented, able to express her ideas, not distractible, indicated some difficulty with concentration, but was generally able to perform mental calculations, and provided good interpretation to questions.  (Ex. 7F/3).  However, even during this examination it was noted that the claimant's level of effort fluctuated at times.  (Ex. 7F/4).

Furthermore, I note the record does not document the claimant having any problems in functioning socially when seeking treatment.  For example, she

is not noted to have had difficulty waiting in public areas, to behave inappropriately with office staff, or to be unable to form a therapeutic rapport with treatment providers.

Based upon the totality of the foregoing, I find that the claimant has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(R. 21). Finally, the ALJ explained why he did not find Plaintiff's condition medically equal to a Listed impairment.

To demonstrate that an individual is disabled based on medical equivalence, the record must contain one of the following: (1) a prior administrative medical finding from a medical or psychological consultant from the initial or reconsideration adjudication levels supporting the medical equivalence finding; (2) medical expert evidence; or (3) a report from the Appeals Council's medical support staff supporting a finding of medical equivalence (SSR 17-2p). None of these evidentiary requirements is satisfied in this case. The ALJ is not required to obtain medical expert evidence or medical opinion prior finding [sic] the claimant's impairment(s) does not medically equal a listed impairment. Because no evidence supports medical equivalence, the claimant's impairments, considered both singly and in combination, do not medically equal a listed impairment.

(R. 22).

## B.    Step Three Standard for Evaluating MS

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If a claimant's condition meets or medically equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482

8

U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet <u>all</u> of the specified medical criteria' contained in a particular listing."  <u>Riddle v. Halter</u>, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in <u>Zebley</u>)); <u>see also</u>, <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  <u>Zebley</u>, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'"  <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).  The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  <u>Yuckert</u>, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 11.09 states:

11.09 Multiple sclerosis, characterized by A or B:

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or

B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:

   1. Understanding, remembering, or applying information (see 11.00G3b(i)); or

   2. Interacting with others (see 11.00G3b(ii)); or

   3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

   4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.09

To meet Listing 11.09A requires an extreme limitation in the ability to (1) stand up from a seated position, or to (2) maintain balance in a standing position and while walking, or to (3) use one's upper extremities to independently initiate, sustain, and complete work-related activities. The regulations explain the meaning of an extreme limitation in this Listing:

2. Extreme limitation means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities. The assessment of motor function depends on the degree of interference with standing up; balancing while standing or walking; or using the upper extremities (including fingers, hands, arms, and shoulders).

   a.  Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.

   b.  Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking

10

without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.

c.  Inability to use your upper extremities means that you have a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements. Inability to perform fine and gross motor movements could include not being able to pinch, manipulate, and use your fingers; or not being able to use your hands, arms, and shoulders to perform gross motor movements, such as handling, gripping, grasping, holding, turning, and reaching; or not being able to engage in exertional movements such a lifting, carrying, pushing, and pulling.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00D2.

To meet Listing 11.09B requires (1) a marked limitation in physical functioning and (2) a marked limitation in one of the mental functional areas: (a) understanding, remembering, or applying information; or (b) interacting with others; or (c) concentrating, persisting, or maintaining pace; or (d) adapting or managing oneself. The Listings define a marked limitation in a mental functional area as being seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings in that mental functional area.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 11.00G2b.  This definition of a marked limitation in a mental functional area is the same as the definition used when evaluating the mental disorder Listings.  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00F2, see also § 12.00F1 ("We will determine whether you are able to use each of the paragraph B areas of mental functioning in a work setting").  Although a marked limitation in a mental functional area is the only limitation in mental functioning required to meet the criteria of Listing 11.09B, the

regulations also define an extreme limitation in the paragraph B criteria for evaluating mental disorders.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00F2e ("Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.").

### C.    Analysis

The question at step three is not whether Plaintiff's condition is such as would prevent her from engaging in substantial gainful activity[2] but the sole question at step three is whether Plaintiff has shown that her condition meets all of the criteria of a single Listed impairment or is medically equivalent to that Listing—in this case either Listing 11.09A or Listing 11.09B.  If her condition meets or medically equals one of the Listings, she is conclusively presumed to be disabled.  If not, the sequential evaluation process continues and the ALJ will then assess Plaintiff's RFC and her ability to engage in SGA.

Here, the ALJ found Listing 11.09A is not met because the record does not show "an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities."  (R. 20) (emphasis added).  Plaintiff

---

[2] The court previously quoted Plaintiff's argument that the ALJ made "the unsupported and unreasonable finding that Plaintiff can engage in significant gainful activity (SGA)." supra at 4 (quoting Pl. Br. 15-16).  As opposed to significant gainful activity, "substantial gainful activity" (SGA) is a term of art used by the SSA.  See, e.g., 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1572.  The ALJ defined and explained that term in his decision (R. 16, 17) and although he did not state that Plaintiff can engage in substantial gainful activity, that is implicit in his finding that Plaintiff can make "a successful adjustment to other work that exists in significant numbers in the national economy" and that she is not disabled within the meaning of the Act.  (R. 27).  The court presumes Plaintiff intended her use of the term to be coextensive with the term of art used by the SSA, and all further reference in this decision to the term SGA refers to the term of art as used by the SSA.

argues that her condition <u>affects</u> these abilities and cites to evidence showing that it <u>affects</u> her balance and her use of her hands and arms, but she does not point to any evidence demonstrating an <u>extreme limitation</u> in these abilities as defined in the regulations as quoted above.  Moreover, as the Commissioner points out, Plaintiff's treating neurologist admitted that she does not have significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station.  (R. 566, no. 6).  In her Reply Brief, Plaintiff argues her "MS causes her extreme limitations, fatigue, dizziness, and numbness, particularly in her feet and hands" (Reply 4), and points to record evidence suggesting <u>difficulties</u> with grip, motor skills, feeling, exacerbations of her MS, day to day limitations, and debilitating symptoms.  (Reply 4-5).  However, Plaintiff does not address the regulatory definition of extreme limitation in the three abilities identified in Listing 11.09A or explain how the evidence demonstrates her condition meets one of those criteria of the listing.  Plaintiff has shown no error in the ALJ's consideration of Listing 11.09A.

The ALJ found Listing 11.09B is not met because the record evidence does not show a marked limitation in one of the four broad mental functional areas.  (R. 20).  Plaintiff acknowledges that the four broad mental functional areas (the paragraph B criteria) are the criteria applicable to both Listing 11.09B and to the mental disorder listings and argues that the ALJ erred both in finding that Listing 11.09B is not met and in finding the mental disorder listings are not met.  (Pl. Br. 20).  She argues, "The ALJ overstated the record, downplayed evidence provided by the Disability Determination

13

Services, and substituted his own medical judgment for that of medical professionals in the record," and cites to record evidence which in her view demonstrates these facts. (Pl. Br. 20-21). She points out that "An extreme limitation [in a mental functional area] is the inability to function independently, appropriately, or effectively on a sustained basis," and argues "Plaintiff is clearly incapable of this" (Pl. Br. 22), but does not explain how the evidence compels finding Plaintiff is <u>unable</u> to or even <u>seriously limited</u> in the ability to function independently, appropriately, or effectively on a sustained basis in any one of the broad mental functional areas. In her Reply Brief, Plaintiff argues

> The key issue necessary to satisfy all the requirements of § 11.09(B) is the fatigue, pain, and respite needed for Plaintiff to carry on day to day activities. The evidence shows that, due to MS, Plaintiff, while capable of doing some things, is not capable of maintaining a SGA, as it is normally performed for 40 hours a week. While the evidence does suggest that the plaintiff functioned better at some times than at others, there is clearly no period where the plaintiff's impairments did not significantly limit her ability to do basic work activities such as understanding, carrying out and remembering simple instructions, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting.

(Reply 7) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Again, Plaintiff's argument appears to misunderstand the question at step three of the sequential evaluation process. The key issue at step three is whether Plaintiff satisfies all the criteria of a listed impairment—in this case Listing 11.09B. And the specific issue in this case is whether Plaintiff is seriously limited in the ability to function independently, appropriately, or effectively on a sustained basis in any one of the broad mental functional areas. As quoted above, Plaintiff asserts the evidence shows she is unable to sustain substantial gainful activity for 40 hours a week on a regular basis, but she does not point to the

evidence or explain how it compels that conclusion contrary to the ALJ's finding.  The regulations Plaintiff cited relate to establishing a medically determinable impairment. The fact Plaintiff has the medically determinable impairment of MS is sufficient to require the ALJ to consider Listing 11.09, but Plaintiff must establish that <u>all</u> of the criteria of either MS Listing are met, and she has not done so here.  When the ALJ found Plaintiff has the severe impairment of MS, he implicitly found that MS significantly limits her ability to do <u>basic</u> work activities, but that does not imply that the criteria of the Listings are met—that she is seriously limited in the ability to function independently, appropriately, or effectively on a sustained basis in any one of the broad mental functional areas.

Having failed to show how the evidence compels a finding that the criteria of the Listings are met, it is also clear she has not shown that her condition medically equals a Listing.  <u>Medical equivalence</u> to a listing may be established by showing that Plaintiff's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment;" 20 C.F.R. §§ 404.1526(a), 416.926(a); but Plaintiff does not point to evidence of a particular limitation which is equal in severity and duration to the criteria of the Listings which the ALJ found are not documented in the record—inability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or a serious limitation in the ability to function independently, appropriately, effectively, and on a sustained basis in one of the four broad mental functional areas.

## III.    Medical Opinions

Plaintiff next claims error in the ALJ's evaluation of the treating source opinion of Dr. Lynch.  She argues the ALJ determined Dr. Lynch's opinion was not worthy of controlling weight but failed to continue with the second step of the treating physician rule to make clear the weight of which it was due.  (Pl. Br. 22-23) (citing Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011)).  Plaintiff claims error in the ALJ's finding Dr. Lynch last treated Plaintiff eight months before she rendered her opinion.  Id. at 23. Plaintiff argues the ALJ's evaluation of Dr. Lynch's opinion "is an inappropriate medical judgment that the ALJ is unqualified to make," id., and in according greater weight to the opinions of the state agency physicians and psychologists

> the ALJ simply substituted his own interpretation of some of those records for that of Dr. Lynch without offering any medical basis to support his opinion.  The opinions of the nonexamining state agency consultants are presumptively entitled to less weight than the opinion of Dr. Lynch, and the ALJ totally failed to rebut that presumption.

Id. at 23-24.

The Commissioner argues the ALJ properly evaluated the medical opinions. (Comm'r Br. 11-14).  He argues the ALJ explained the weight he accorded to each opinion and explained the portions of Dr. Lynch's opinion to which he accorded weight and the portions which he discounted, and he provided good reasons for the weight accorded.  Id. at 11-12.

## A.    Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's]

symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such

opinions may not be ignored and, unless a treating source opinion[3] is given controlling

weight, all medical opinions will be evaluated by the Commissioner in accordance with

factors contained in the regulations.  Id. §§ 404.1527(c), 416.927(c); Soc. Sec. Ruling

(SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019).  A

physician who has treated a patient frequently over an extended period (a treating source)

is expected to have greater insight into the patient's medical condition, and her opinion is

generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir.

2003).  But, "the opinion of an examining physician [(a nontreating source)] who only

saw the claimant once is not entitled to the sort of deferential treatment accorded to a

treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th

Cir. 1995)).  However, opinions of nontreating sources are generally given more weight

than the opinions of nonexamining sources who have merely reviewed the medical

record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler,

814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902 (2016).

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

(10th Cir. 1983), <u>Whitney v. Schweiker</u>, 695 F.2d 784, 789 (7th Cir. 1982), and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); <u>see also</u>, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2019) ("Giving Controlling Weight to Treating Source Medical Opinions").[4]

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" <u>Id.</u> at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. <u>Id.</u> "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." <u>Id.</u>

---

[4] As the Commissioner argues, SSR 96-2p (and, for that matter SSR 96-5p, cited <u>supra</u>) was rescinded effective March 27, 2017. (Comm'r Br. 13, n.16) (<u>see also</u> <u>Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-3p; Correction</u> 2017 WL 3928297, (SSA April 6, 2017)). However, those SSRs were effective during the period the Treating Physician Rule was implemented and they explained the application of that rule. As noted <u>supra</u>, the Treating Physician Rule is still in effect for claims such as that here, filed before March 17, 2017 and the court sees no reason not to apply the rationale of those SSRs to that rule as applied here.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

## B.    The ALJ's Evaluation of the Medical Opinions

The court reproduces here in full the ALJ's evaluation of the medical opinions.

As for the opinion evidence, I considered the State Agency psychiatric opinions of J. Edd Bucklew, Ph.D., and James Morgan, Ph.D., and gave their opinion significant weight with regards to Title II, and partial weight with regards to Title XVI.  Both Dr. Morgan and Dr. Bucklew found there to be no medically determinable impairments at the date last insured, which

is consistent with the medical record (Ex. 1A; 2A; 6A).  With regards to Title XVI, Dr. Morgan and Dr. Bucklew both opined that the claimant had mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration.  (Ex. 1A; 2A; 5A).  The claimant's records and reports however indicate that she does have some decreased ability in performing her activities of daily living.  Additionally, her mental status examination at least showed some issues with getting along with other[s] and maintaining concentration that in turn has more than a mild effect on her ability to complete tasks and perform activities of daily living.  Furthermore, Dr. Bucklew specifically opined that the claimant was mildly limited in understanding and adapting and managing herself.  However, the record indicates that the claimant's limitations in these domains are more than minimal, as reflected by her consultative examination.  Based on the foregoing, I have given these opinions only partial weight in this regard.

I also considered the State Agency opinion of David Marty, M.D., and gave his opinion significant weight with regards to Title II, and little weight with regards to Title XVI.  Dr. Marty found there to be no medically determinable impairments at the date last insured, which is consistent with the medical record (Ex. 6A).  With regards to Title XVI, I give his opinion little weight.  (Ex. 5A).  Dr. Marty opined that the claimant was limited to the light exertional level, with occasional postural limitations, and limitations to vibrations and hazards.  However, the medical evidence suggests that the claimant is more appropriately limited to the sedentary exertional level, including the opinion of Dr. Lynch discussed below (Ex. 10F).

I furthermore considered the consultative opinion of Jason E. Neufeld, Ph.D., and give his opinion great weight.  Dr. Neufeld opined that the claimant could follow simple instructions, adapt and make judgment to complex instructions, and should have some limitations (although not complete limitation) from interacting with others.  (Ex. 7F/4).  This opinion is consistent with the medical evidence of record, and is supported by the examination and findings noted by Dr. Neufeld in his examination.  Additionally, Dr. Neufeld is an examining source.  Furthermore, Dr. Neufeld findings [sic] are consistent with the medical evidence of record, which fails to show more serious limitations in the claimant's mental functioning.  Based on the foregoing, I have given this opinion great weight.

Additionally, I considered the opinion of Sharon Lynch, M.D., and gave her opinion partial weight.  (Ex. 10F).  Dr. Lynch opined that the claimant

indicated that the claimant's pain frequently interfered with her concentration, should have moderate limitations in work stress, could sit more than 2 hours, and stand for 20 minutes or less, would need unscheduled breaks, with specific environmental limitations, and would have to miss work more than three times per month. (Ex. 10F/2-4.) I have given this opinion partial weight. Dr. Lynch is a treating source, but only saw the claimant's [sic] three times, with the most recent being 8 months before the opinion was signed. (Ex. 10F/3.) Further, it is internally inconsistent in that Dr. Lynch states the claimant's multiple sclerosis was "stable" with no relapses in [the] last 12 months, but then gave very restrictive limitations. Nevertheless, Dr. Lynch's sedentary limitations, and environmental restrictions are reasonable in light of the claimant's symptoms and impairments. Based on the foregoing, I have given this opinion partial weight.

(R. 24-25).

## C.    Analysis

As noted in the court's discussion of the legal standard applicable to judicial review of a decision of the Commissioner, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905. The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence. 42 U.S.C. § 405(g). In this case, neither party began with the decision at issue, but Plaintiff began by asserting what, in her view, the evidence shows and the Commissioner began by countering Plaintiff's arguments with an assertion of what was a reasonable view of the evidence. When the parties fail to begin with the rationale presented in the decision, it appears that the plaintiff wants the court to reweigh the evidence and substitute its judgment regarding a proper decision for that of the

Commissioner without considering whether the Commissioner's decision itself is supported by substantial evidence, and that the Commissioner wants the court to provide a post hoc rationalization for the decision reached.  Both propositions are prohibited. See, e.g., Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905; and, Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985); Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

Plaintiff's argument that the ALJ found Dr. Lynch's opinion unworthy of controlling weight but failed to take the second step and explain the weight of which it was due is without merit.  To be sure, the ALJ discussed much evidence with which Dr. Lynch's opinion was inconsistent thereby demonstrating that it was unworthy of controlling weight, but he also affirmatively noted that he accorded it partial weight because her "sedentary limitations, and environmental restrictions are reasonable in light of the claimant's symptoms and impairments."  (R. 25).

Plaintiff is correct that the ALJ erroneously stated Dr. Lynch most recently saw Plaintiff eight months before she signed her opinion.  Her last recorded visit was January 17, 2018 (R. 566) and she signed the MS Questionnaire on April 9, 2018.  (R. 568). However, the ALJ explained his relative weighing of the medical opinions and his erroneous view that the opinion was signed eight months after her last visit does not negate his rationale for discounting the opinion.  As quoted above, the ALJ considered and discussed all the medical opinions.  As to Dr. Lynch's opinion, he noted that she had only treated Plaintiff three times in the course of a year and that although she found Plaintiff's MS "stable" with no relapses in the last 12 months she opined that Plaintiff

had "very restrictive limitations." (R. 25). In fact, Dr. Lynch's opinion was signed in April 2018, and she stated, "no relapse in the past 12 months – last one in 2016 possibly," suggesting the period was longer than 12 months, perhaps much longer. (R. 566). The ALJ specifically credited Dr. Lynch's sedentary limitations and environmental restrictions in according her opinion partial weight. Moreover, in evaluating the other medical opinions, the ALJ extensively explained the limitations he found supported by the record and explained that although Dr. Marty found Plaintiff capable of light exertion, "the medical evidence suggests that the claimant is more appropriately limited to the sedentary exertional level, including the opinion of Dr. Lynch discussed below." (R. 25).

Plaintiff's suggestion that the ALJ's evaluation of Dr. Lynch's opinion is a medical judgment which the ALJ is unqualified to make, and that in according greater weight to the opinions of the other physicians and psychologists he was merely substituting his interpretation of the evidence without offering a medical basis, misunderstands the duty of the ALJ in weighing the record evidence. Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R.

§§ 404.1545(a), 416.945(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.  As is usually the case in a Social Security disability case, the record evidence here is equivocal.  It is the ALJ's duty to weigh that evidence and explain which evidence he credits and why.  The ALJ here did so.  Because the ALJ applied the correct legal standard and substantial evidence in the record as a whole—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401—supports the ALJ's weighing of the medical opinions, the court must affirm it.

Finally, Plaintiff's argument that Dr. Lynch's treating source opinion is presumptively entitled to greater weight than the opinions of the state agency nonexamining source consultants, "and the ALJ totally failed to rebut that presumption" (Pl. Br. 24), is without merit.  While, as noted supra, a treating source opinion is generally entitled to "particular weight," Doyal, 331 F.3d at 762, the opinion of a nontreating source is not entitled to the deferential treatment accorded to a treating source opinion, and opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources, Plaintiff cites no authority for a rebuttable presumption that a treating source opinion will be given greater weight than a nonexamining source opinion.  Rather, as noted above, an ALJ must weigh all the opinions and explain the weight accorded each.  He has done so here, his analysis is supported by the record evidence, and Plaintiff has not shown that the evidence compels a different weight.

## IV.    Residual Functional Capacity Assessment

Plaintiff claims the ALJ erred in assessing RFC.  She argues the ALJ failed "to account for Plaintiff's limitations due to fatigue, and exertional limitations that would lead to absenteeism."  (Pl. Br. 25).  She argues her feelings of "pins and needles" in her hands, and her arms falling asleep are "not as inconsequnetial [sic] as the ALJ would lead a subsequent fact finder to believe," id., and the record evidence "shows overwhelmingly that Plaintiff is significantly limited in her upper extremities by numbness and paresthesia."  Id. at 26.  The Commissioner acknowledged Plaintiff's argument that the ALJ erred "in assessing her RFC."  (Comm'r Br. 4).  However, other than stating the "RFC assessment … was supported by favorable medical findings," the opinion evidence credited by the ALJ, and by the ALJ's evaluation of Plaintiff's allegations of symptoms, id. at 14, the Commissioner did not address Plaintiff's specific allegations.  Nevertheless, the court finds no error in the RFC assessment.

### A.    Standard for Assessing RFC

The Commissioner has promulgated regulations regarding assessment of RFC.  20 C.F.R. §§ 404.1545-1546, 416.945-946.  In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite her impairment(s).  Id. at §§ 404.1545, 416.945.  The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all the claimant's impairments, including impairments which are not "severe" as defined in the regulations.  Id. at §§ 404.1545(a & e), 416.945(a & e).  The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as

25

understanding, remembering, and carrying out instructions; responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments.  Id. §§ 404.1545(b,c,d), 416.945(b,c,d); see also §§ 404.1521, 416.921 (listing examples of basic work activities which may be affected by impairments).  At the ALJ hearing level, it is the ALJ's responsibility to assess RFC.  Id. §§ 404.1546(c), 416.946(c).

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2019).  The ruling explains that assessment of RFC involves a function-by-function consideration of each work-related ability before expressing the RFC in terms of the exertional categories of "sedentary," "light," and so forth.  Id. at 143, 145-46.  Failure to perform a function-by-function assessment may result in improper findings at step five regarding Plaintiff's ability to perform other work in the national economy.  Id. at 145-46).

The Ruling also includes narrative discussion requirements for the RFC assessment.  Id. at 149.  The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff can perform sustained work activities, and describe the maximum amount of each work activity she can perform.  Id.  The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of the plaintiff's

allegations of symptoms and consideration of medical opinions regarding her capabilities.

Id. at 149-50.  If the ALJ's RFC assessment conflicts with a medical source opinion, the

ALJ must explain why he did not adopt the opinion.  Id. at 150.

### B.    The ALJ's RFC Assessment

The ALJ found

> the claimant has the residual functional capacity to perform sedentary work
> as defined in 20 CFR 416.967(a) except the claimant can lift and carry up
> to ten pounds occasionally and lift or carry less than ten pounds frequently,
> stand and/or walk for two hours out of an eight-hour workday, and sit for
> six hours out of an eight-hour workday.  The claimant should never climb
> ladders, ropes and scaffolds; and can occasionally climb ramps and stairs,
> balance, stoop, kneel, crouch and crawl.  The claimant can frequently use
> hand controls, handle, finger and feel bilaterally.  The claimant should
> never work at unprotected heights or with moving mechanical parts; and
> can occasionally work in vibration.  The claimant can occasionally be
> exposed to humidity / wetness, dust, odors, fumes and pulmonary irritants,
> and extreme cold; and never be exposed to extreme heat.  The claimant is
> able to understand, remember, and carry out simple, routine and repetitive
> tasks in a work environment with no fast-paced production requirements
> involving only simple work-related instructions and decisions, and with
> only occasional judgment and work place changes.  The claimant can
> occasionally respond to and have interaction with supervisors, coworkers
> and the general public.

(R. 22) (bold omitted).  In making his RFC assessment the ALJ considered, summarized,

and discussed the medical opinions as discussed supra.  (R. 24-25).  He considered,

summarized, and discussed Plaintiff's allegation and the record medical evidence.  Id. at

18-24.  He considered, summarized, and discussed the statements provided by Plaintiff's

mother, id. 25, and summarized his evaluation of the RFC assessed.  (R. 24, 25-26).

### C.    Analysis

As a preliminary matter, the court notes that Plaintiff suggested an erroneous burden of proof when she stated, "the Government bears the burden of proving that its position was 'substantially justified' in law and fact at both the administrative and court stages of adjudication." (Pl. Br. 25) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)). Underwood was a case reviewing a request for attorney fees pursuant to the Equal Access to Justice Act (EAJA). The Court determined that abuse of discretion was the appropriate standard to be applied in reviewing "a district court's decision regarding attorney's fees under the EAJA." Underwood, 487 U.S. at 563. The Court then determined that the meaning of the phrase "substantially justified" in the EAJA was "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person" which "is no different from the 'reasonable basis both in law and fact' formulation" used by many courts. Id. at 565. To be sure, to successfully resist payment of an attorney's fee in a Social Security case which results in a remand, the Government must show that its position before the agency and before the court was substantially justified. But this case has not been remanded because of errors in the Commissioner's decision and the court is not addressing attorney fees. Substantial justification as defined in Underwood is simply not applicable in this case. As noted above, Plaintiff here bears the burden of proof through the first four steps of the sequential evaluation process, and at the fifth step of the process, the Commissioner bears the burden to show that there are jobs in the national economy within the RFC which was assessed between steps three and four. Blea, 466 F.3d at 907; accord, Dikeman, 245 F.3d at 1184; Haddock, 196 F.3d at 1088; Williams, 844 F.2d at 751 n.2.

The ALJ specifically noted that Plaintiff alleged disabling symptoms including fatigue, exhaustion, numbness in hands and arms, and "pins and needles" feelings in hands and arms. (R. 23). And, he also found Plaintiff's

> statements concerning the <u>intensity, persistence and limiting effects</u> of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision,

noting immediately thereafter that Plaintiff's

> medical records indicate that her motor function has been coordinated and symmetrical, reflexes are present and equal, normal hand grip strength and dexterity, and only diminished sensation in her hands. Additionally, the claimant's records indicate that she has been stable in her current regimen.

<u>Id.</u> (emphasis added) (citation to the record omitted). Moreover, the ALJ included RFC limitations recognizing that Plaintiff's upper extremity issues present some limitations although not as severe as suggested by Plaintiff. He explained:

> Based on the medical evidence of record, the claimant's multiple sclerosis also limits her ability to use hand control[s], handle, finger, and feel bilaterally. Furthermore, the claimant's severe impairments limit the environments that she can work in, that reasonably would exacerbate her symptoms, or present hazards to her well-being, in light of her impairments.

(R. 24). Plaintiff's assertion the record evidence "shows overwhelmingly that Plaintiff is significantly limited in her upper extremities by numbness and paresthesia," provides no citation to record evidence showing a greater limitation than that accounted for by the RFC assessed. (Pl. Br. 26). Plaintiff has shown no error in the ALJ's RFC assessment.

## V.   Conflict Between VE Testimony and the DOT

Plaintiff points out that the representative jobs of which the VE testified she is capable and upon which the ALJ relied require a reasoning development level of two or

three and therefore require the ability to carry out detailed instructions—but argues that the ALJ did not find Plaintiff capable of detailed instructions, thereby precluding the work the ALJ relied upon.  (Pl. Br. 27).  She argues the ALJ did not explain how the alleged conflict between the DOT and the VE testimony was resolved.  Id.

The Commissioner acknowledges that SSR 00-4p requires an ALJ to explain any apparent conflict between the VE testimony and the DOT but argues that Plaintiff has shown no conflict here.  (Comm'r Br. 23-24).  He argues that the DOT provides information about jobs including the General Educational Development (GED) which "assesses three broad areas of educational development—reasoning, mathematics, and language," and that Plaintiff suggests unskilled work includes only reasoning level one, which none of the representative jobs possess.   Id. at 24.  He argues GED "is not a job description or reflective of a job's particular mental demands, but rather, describes generally the education expected for a job," whereas "GED does not reasonably correlate to RFC."  Id. (citing Anderson v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013)).  He argues the relevant factor in the DOT for determining whether an individual can perform unskilled work is the Specific Vocational Preparation (SVP), and each of the representative jobs relied upon here have an SVP of 2 which equates to unskilled work. Id. at 25.  In a footnote, the Commissioner explains, "SVP is the time a typical worker requires to learn techniques, acquire information, and develop facility for average work performance; SVP 2 means anything beyond short demonstration up to and including one month."  (Comm'r Br. 25, n.22) (citing DOT, App'x C § III (4th Ed. Rev. 1991)).

In her Reply Brief, Plaintiff argues that "a finding that Plaintiff was not educated enough to complete tasks such as those with detailed instruction is a determination that the Court [sic] may make" and the Tenth Circuit has held that "the Commissioner must resolve conflicts between a claimant's RFC and the GED in the DOT."  (Reply 9) (citing Hackett, 395 F.3d at 1176).  She asserts, "The ALJ's finding that Plaintiff is only capable of 'simple, routine and repetitive tasks' limits Plaintiff to jobs with a reasoning level of one.  At a reasoning level of one, a claimant is expected to have retained the capacity to 'apply commonsense understanding to carry our simple one- and two-step instructions.'" Id. (quoting DOT, App'x C, Pt. III).   Plaintiff acknowledges that an SVP of 2 requires "anything beyond short demonstration up to and including one month," but argues, "The ALJ made no findings that would suggest that Plaintiff is capable of this level of skill" and "finding that Plaintiff can work at an SVP of two is therefore, [also] incomplete, and conflicts with the ALJ's RFC analysis."  Id. at 10.

## A.    The ALJ's Evaluation

In applying the Commissioner's Psychiatric Review Technique the ALJ found Plaintiff has moderate limitations in the broad mental functional areas of understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace.  (R. 21).  As it relates to Plaintiff's Mental RFC and as noted above, the ALJ accorded partial weight to Dr. Bucklew's and Dr. Morgan's opinions regarding Title XVI (SSI), id. at 24, and great weight to Dr. Neufeld's opinion.  Id. at 25.  Dr. Bucklew and Dr. Morgan opined that Plaintiff "retains the ability to understand and remember simple

to moderately complex instruction," and "can carry out simple work to moderately

complex instruction."  Id. at 74, 75, 103, 104.  Dr. Neufeld opined that his examination

> did not confirm that the claimant would be entirely precluded from
> understanding and remembering complex instruction; maintaining
> concentration, persistence, and pace with simple instruction; and adapting
> and making judgment related to complex instruction.  The claimant's
> ability to maintain concentration, persistence, and pace with intermediate
> and complex instruction remained uncertain to this examiner.

Id. at 514.  In his mental RFC, the ALJ found Plaintiff can "understand, remember, and

carry out simple, routine and repetitive tasks in a work environment with no fast-paced

production requirements involving only simple work-related instructions and decisions,

and with only occasional judgment."  (R. 22).

The ALJ explained his findings regarding Plaintiff's ability to perform work in the

national economy:

> The vocational expert testified that given all of these factors [(Plaintiff's
> age, education, work experience, and RFC)] the individual would be able to
> perform the requirements of representative occupations such as:  addresser,
> DOT 209.587-010, sedentary exertional, unskilled (SVP 2) with 8,045 jobs
> nationally; document preparer, DOT 249.587-018, sedentary exertional,
> unskilled (SVP 2) with 47,715 jobs nationally; and cutter paster, DOT
> 249.587-014, sedentary exertional, unskilled (SVP 2) with 3,850 jobs
> nationally.

Id. at 27.  He found that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is

consistent with the information contained in the Dictionary of Occupational Titles," and

based on the VE's testimony he concluded "that, considering the claimant's age,

education, work experience, and residual functional capacity, the claimant is capable of

making a successful adjustment to other work that exists in significant numbers in the

national economy."  (R. 27).

**B.**     **Analysis**

Plaintiff's argument relies upon her assumption that any job with a reasoning level greater than one is beyond the Mental RFC assessed by the ALJ in this case—"only simple work-related instructions and decisions, and with only occasional judgment and work place changes."  (R. 22).  Although it is not absolutely clear, it appears her assumption comes from the fact that the DOT defines "01 Level Reasoning Development" using the term "simple … instructions:"

> Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

but uses the term "detailed … instructions" in defining "02 Level Reasoning Development:"

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

(DOT, App'x C, Pt. III), available at:  https://occupationalinfo.org/appendxc_1.html#III (last visited June 29, 2020).

The problem with Plaintiff's assumption is that it rests upon the further assumption that "simple … instructions" in the DOT definition of "01 Level Reasoning" must be equivalent to "simple … instructions" in an RFC assessed by an ALJ.  But Plaintiff presents no appropriate authority for either assumption.  The DOT explains that

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective.  Ordinarily, such

33

education is obtained in elementary school, high school, or college.
However, it may be obtained from experience and self-study.

The GED Scale is composed of three divisions:  Reasoning Development,
Mathematical Development, and Language Development.

(DOT, App'x C, Pt. III) available at:  https://occupationalinfo.org/appendxc_1.html#III

(last visited June 29, 2020).

Thus, as the Commissioner argues, GED deals with the amount of education

(formal or informal) an occupation requires, "reasoning development" is one of three

divisions of educational development, and "01 level reasoning development" relates to

occupations which require the least educational development in reasoning.  While it

might be reasonable for a layman, an attorney, or a court to conclude from the DOT

definition of 01 level reasoning development that the educational development necessary

"to carry out simple … instructions" is equivalent with the mental abilities "to

understand, remember, and carry out simple, routine and repetitive tasks in a work

environment with no fast-paced production requirements involving only simple work-

related instructions and decisions, and with only occasional judgment and work place

changes," which the ALJ found, Plaintiff cites no authority requiring it.  Reasoning level

in the DOT relates to the educational background a particular occupation requires

whereas mental abilities in a Mental Residual Functional Capacity Assessment represent

20 mental functional abilities grouped in 4 categories—Understanding and Memory,

Sustained Concentration and Persistence, Social Interaction, and Adaptation.  POMS DI

24510.060(B)(2).  The ability to understand and remember instructions and the ability to

carry out instructions fall within the categories of Understanding and Memory, and of

Sustained Concentration and Persistence, respectively.  (R. 74-75, 103-04); see also POMS DI 24510.060(B)(2).  While educational requirements and mental abilities intuitively appear to be related, Plaintiff has shown no direct correlation, none of Dr. Bucklew, Dr. Morgan, or Dr. Neufeld stated a correlation between his opinion regarding Plaintiff's mental abilities and the DOT GED reasoning levels, and the VE stated that an individual with the Mental RFC assessed by the ALJ would be able to perform the representative jobs relied upon by the ALJ, and testified that his testimony was consistent with the DOT.  (R. 62-63).  Plaintiff may not create a conflict based upon her or her attorney's lay reading of the DOT in opposition to a vocational expert.

As with her argument that there is a conflict between the VE testimony and the DOT, Plaintiff's argument that the ALJ made no findings that would suggest Plaintiff is capable of SVP 2 work misunderstands the purpose of VE testimony.  A vocational expert is an individual who is qualified to evaluate an individual's abilities and determine what work she is qualified to perform.  As noted above, when the ALJ provided the VE with the Mental RFC of which he found Plaintiff capable, the VE responded that such an individual can perform the three representative jobs at issue here, specifically stating each requires an SVP of 2.  Id. at 63.  The ALJ noted the VE testified that the representative jobs were SVP 2 and stated, "Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Id. at 26-27 (emphasis added). There can be no doubt that the ALJ found Plaintiff capable of SVP 2 work.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated June 30, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**